# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| GALE A. DOWNS | * | CIVIL ACTION NO.  11-0550 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

## Background & Procedural History

Gale A. Downs protectively filed the instant application for Title II Disability Insurance Benefits on January 29, 2009.  (Tr. 124, 104-206).  She alleged disability as of October 1, 2008, because of human immuno-deficiency virus (HIV), neuropathy, and hypertension.  (Tr. 124, 128).  The claim was denied at the initial stage of the administrative process.  (Tr. 54-59). Thereafter, Downs requested and received a November 12, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 28-53).  However, in an April 19, 2010, written decision, the ALJ determined that Downs was not disabled under the Act, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to other work that exists in substantial numbers in the national economy.  (Tr. 11-23).  Downs appealed the adverse

decision to the Appeals Council.  On February 18, 2011, however, the Appeals Council denied

herDowns' request for review; thus the ALJ's decision became the final decision of the

Commissioner.  (Tr. 1-4).

On April 7, 2011, Downs sought review before this court.  She alleges the following

errors:

(1)      the ALJ's rationale for rejecting the assessment of plaintiff's treating osteopath is
          not supported by substantial evidence;

(2)      the ALJ erred by failing to address the side effects of plaintiff's medications; and

(3)      the ALJ's hypothetical to the vocational expert at step five of the sequential
          evaluation process failed to include all of plaintiff's limitations.

**<u>Standard of Review</u>**

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a

preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's

determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

> (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

> (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

> (3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

> (4)    If an individual's residual functional capacity is such that he or she can

3

still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Downs did not engage in substantial gainful activity during the relevant period.  (Tr. 16-17).  At step two, he found that she suffers severe impairments of HIV (asymptomatic); peripheral neuropathy, and obesity.  *Id*.  He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 17-18).

### II.     Residual Functional Capacity

The ALJ next determined that Downs retained the residual functional capacity ("RFC") to perform light work, reduced by the ability to only occasionally climb ramps or stairs, balance,

4

stoop, kneel, crouch, or crawl, but unable to ever climb ladders, ropes, or scaffolds.  (Tr. 18).[1]

        a)      <u>Chronology of Relevant Medical Evidence</u>

The instant medical record is relatively sparse.  It begins roughly one year before the alleged disability onset date with treatment notes from California that extend until September 30, 2008.  (Tr. 161-176).  The records reflect that plaintiff was being treated for HIV, peripheral nervous system disorder, hypertension, obesity, and peripheral neuropathy, among other things. *See* Tr. 175.  Contrary to plaintiff's representations at the hearing, the records consistently document that she moved to Bastrop, Louisiana so she could live near her father  – rather than her declining ability to work.  *See* Tr. 168, 170, 172, 175.[2]  In fact, the California treatment records uniformly indicate that she was feeling well, with no complaints.  (Tr. 166, 168, 170, 172, 175).

Plaintiff initially visited E. A. Conway Medical Center in January 2009, and established a treating relationship with Tammy Jones, D.O.  (Tr. 179).  Despite the recently established treatment relationship, Jones completed a Medical Report on Adult with Allegation of Human

---

[1]  Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2]  Plaintiff testified that the primary reason she left her job in California was because of the pain and numbness that she was experiencing in her lower extremities.  (Tr. 45).

Immunodeficiency Virus (HIV) Infection, on January 21, 2009, wherein she wrote that Downs suffered from peripheral neuropathy that prevented her from standing for extended periods. (Tr. 197-199).

Plaintiff saw Jones again on April 22, 2009, when she advised the attending nurse that she was not experiencing any pain. (Tr. 211). The record contains no other treatment notes.

On April 25, 2009, consultative physician, Phillip Madonia, M.D., examined Downs at the request of disability determination services. (Tr. 214-217). At the time of the examination, Downs complained that she could stand or walk only for a short period before her legs went numb. *Id*. Neurontin only gave her mild relief from pain. *Id*. She admitted to malaise and fatigue. *Id*. Nonetheless, she maintained a normal gait, and was able to bend and squat without difficulty. *Id*. She demonstrated 5/5 grip strength, with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. *Id*. She exhibited good muscle tone, and 5/5 strength bilaterally in all muscle groups. *Id*. Madonia found that, objectively, she had good range of motion, good sensation in her legs, and her gait was normal. *Id*. He opined that she could sit, walk, and/or stand for a full workday; lift/carry objects without limitations; hold a conversation; respond appropriately to questions; and remember instructions. *Id*.

Dr. Madonia later submitted an addendum to his report wherein he clarified that his opinion took into account Downs' objective findings *and* her subjective complaints. (Tr. 218). He felt that she had some degree of neuropathy, but her physical findings were not so severe that she was unable to work. *Id*. She had a full range of motion and good strength in her lower extremities and her gait was normal. *Id*. If her neuropathy had worsened, Madonia offered to revise his statement to reduce her ability to work essentially to the sedentary level. *Id*.

Relying upon the record and Dr. Madonia's consultative report, on May 5, 2009, non-

6

examining agency physician, Johnny Craig, M.D., completed a physical residual functional capacity assessment for a full range of light work.  (Tr. 220-228).

Between May 22 and June 1, 2009, SSA Quality Control reviewed the state agency initial determination, and directed the state agency to resolve the discrepancy between Dr. Madonia's findings and the standing limitation imposed by plaintiff's treating osteopath, Dr. Jones.  *See* Tr. 144-146, 245.[3]

On June 29, 2009, Dr. Craig emphasized that, upon further review of the medical record, he discerned no evidence of any significant functional limitations.  (Tr. 247).  He further noted that Downs' symptoms were not consistent with peripheral neuropathy.  *Id*.  Craig ultimately signed a revised residual functional capacity assessment form that recognized the exertional capacity for light work, but with postural limitations that the ALJ incorporated into his RFC.  *Id*.[4]

From April 22, 2009, onwards, the record is devoid of any further treatment notes. Nevertheless, on October 6, 2009, plaintiff's treating osteopath, Dr. Jones, completed an attorney-supplied medical source statement regarding peripheral neuropathy.  (Tr. 260).  Jones indicated that plaintiff could stand for a total of two hours per work day, occasionally lift five pounds, but no weight frequently.  *Id*.  She could occasionally bend and manipulate her hands. *Id*.  However, she could never stoop.  *Id*.  Jones described Downs' pain as moderate to severe. *Id*.  She stated that Downs had to control her pain with sedating medication.  *Id*.  Although the medication did not completely control the pain, it decreased the pain level.  *Id*.  Downs also suffered from decreased grip strength in both hands, left more than right.  *Id*.  She had to move

---

[3]  This review likely sparked Dr. Madonia's addendum to his original report.

[4]  Dr. Craig initially was inclined to limit plaintiff to standing and/or walking for four to five hours per work day.  (Tr. 247).  However, the state agency disability examiner prevailed upon him to agree to an exertional capacity consistent with light work.  (Tr. 248).

after sitting for 30 minutes because of increased pain with the neuropathy.  *Id*.  She was then

being evaluated for left shoulder pain and decreased grip strength in her left hand.  *Id*.

     Jones also completed an attorney-supplied medical statement regarding HIV and AIDS on

October 6, 2009.  (Tr. 261-263).  She reiterated many of the same limitations from the peripheral

neuropathy form.  *Id*.  She added that plaintiff was experiencing left shoulder pain and decreased

grip strength in her left hand, which was under evaluation.  *Id*.

     b)    <u>Discussion</u>

     Plaintiff raises several challenges to the ALJ's RFC.  Obviously, she contends that the

ALJ erred by failing to adopt the limitations assigned by her treating physician/osteopath, Dr.

Jones.  The court recognizes that

> "ordinarily the opinions, diagnoses, and medical evidence of a
> treating physician who is familiar with the claimant's injuries,
> treatments, and responses should be accorded considerable weight
> in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th
> Cir.1985). **The treating physician's opinions, however, are far
> from conclusive. "[T]he ALJ has the sole responsibility for
> determining the claimant's disability status.**" *Moore v. Sullivan*,
> 919 F.2d 901, 905 (5th Cir.1990).
>
> **Accordingly, when good cause is shown, less weight, little
> weight, or even no weight may be given to the physician's
> testimony**. The good cause exceptions we have recognized include
> disregarding statements that are brief and conclusory, not
> supported by medically acceptable clinical laboratory diagnostic
> techniques, or otherwise unsupported by the evidence. *Scott*, 770
> F.2d at 485. In sum, the ALJ "is entitled to determine the
> credibility of medical experts as well as lay witnesses and weigh
> their opinions accordingly." *Id.*; see also 20 C.F.R. §
> 404.1527(c)(2) ("If any of the evidence in your case record,
> including any medical opinion(s), is inconsistent with other
> evidence or is internally inconsistent, we will weigh all the other
> evidence and see whether we can decide whether you are disabled
> based on the evidence we have.").

*Greenspan*, 38 F.3d at 237 (emphasis added).

In this case, however, the ALJ essentially adopted the finding of the state agency physician, Dr. Craig, which, in turn, was premised upon Dr. Madonia's consultative examination report.  The ALJ discounted the limitations imposed by plaintiff's treating physician/osteopath on the grounds that they were not supported by any objective test results, and because the treatment records did not document any functional restrictions.  (Tr. 21).  The court adds that Drs. Madonia and Craig reconsidered their findings in light of Dr. Jones's January 2009 assessment that limited Downs's ability to stand and walk for extended periods.  Nonetheless, both Madonia and Craig stood by their findings.[5]

Plaintiff further argues that the ALJ should have considered all of the criteria set forth in 20 C.F.R. § 404.1527(d)(2) before declining to credit Dr. Jones's limitations.  However, the ALJ need not perform a detailed analysis of § 404.1527(d)(2) factors where, as here, the record contains reliable medical evidence from another examining physician.  *See Holifield v. Astrue*, 402 Fed. Appx. 24 (5th Cir. Nov. 10, 2010) (unpubl.) (citation omitted); *see also Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. 11/27/2007) (unpubl.).

In sum, the ALJ's decision to place little weight, or to effectively reject the limitations recognized by Dr. Jones is supported by substantial evidence.  *Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006 WL 2167675 (5th Cir. 08/02/2006) (unpubl.); *see also Nugent v. Astrue*, 2008 WL 2073891 (5th Cir. May 16, 2008) (ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier treatment notes, objective medical findings, and other examining physicians' opinions); *Richard ex rel. Z.N.F. v. Astrue*, 2012 WL 2299479 (5th Cir.

---

[5] While it could be argued that plaintiff's condition worsened between the time of Dr. Madonia's examination in April 2009 and when Dr. Jones completed her medical source statements in October 2009, the force of this argument is blunted by the absence of any treatment notes that document a decline in her condition.  Furthermore, Dr. Jones's credibility had already been called into question by Dr. Madonia's contrary examination findings.

June 15, 2012) (unpubl.) (ALJ may discredit physician's opinion by pointing to contrary evidence, albeit however tersely); *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.) (court noted that ALJ *could have* discounted treating physician's opinion because the opinion contradicted his own treatment notes and the claimant's admissions); *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. April 20, 2011) (unpubl.) (upholding ALJ's decision to discount treating physician's opinion because, as the ALJ explained, it was "not supported by the objective findings of his own clinic notes nor by the evidence as a whole.").

Plaintiff further argues that the ALJ failed to properly evaluate her subjective complaints and credibility.  When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p.  The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in his credibility assessment.  *Falco v. Shalala*,  27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."  (Tr. 19). In other words, the ALJ credited the limitations recognized by the consultative and agency physicians over Downs' self-professed limitations.  The ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence.  *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*,

261 Fed. Appx. 644 (5ᵗʰ Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing);  *Hernandez v. Astrue*, 2008 WL 2037273 (5ᵗʰ Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

Relatedly, plaintiff argues that the ALJ failed to account for her complaints that her medication (neurontin and elavil) caused side effects of drowsiness.[6]  However, the ALJ implicitly rejected this additional limitation when he adopted the findings of Drs. Craig and Madonia, who did not assign any limitations from drowsiness.[7]  Moreover, in connection with her appeal of the agency denial, plaintiff completed a form indicating that she had no side effects from her medication.  (Tr. 153).

In sum, the court finds that the ALJ's residual functional capacity assessment is supported by substantial evidence.

### III.   **Steps Four and Five**

The ALJ concluded at step four of the sequential evaluation process that Downs could not perform her past relevant work.  (Tr. 21).  Accordingly, he proceeded to step five.  At this step, the ALJ determined that plaintiff was an individual closely approaching advanced age, with at least a high school education, and that transferability of skills was immaterial.  *Id*.  The ALJ observed that given Downs' vocational factors, and if she were capable of the full range of light

---

[6]  Dr. Jones also noted the sedating effect of neurontin.  (Tr. 263).

[7]  Plaintiff complained to Dr. Madonia that she suffered from fatigue and malaise. Nonetheless, Dr. Madonia did not assign any limitation from these complaints.
This same rationale forecloses plaintiff's argument that the ALJ should have assigned additional limitations regarding her need to take additional breaks during the work day, and the likelihood that she would have excessive work absences.

work, the Medical-Vocational Guidelines would direct a finding of not disabled.  20 C.F.R. §
404.1569; Rule 202.14, Table 2, Appendix 2, Subpart P, Regulations No. 4.  However, because
Downs' residual functional capacity did not permit her to perform the full range of light work,
the ALJ consulted a vocational expert ("VE") to determine the extent that her additional
limitations eroded the occupational base for unskilled light work.  In response, the VE identified
representative jobs that were consistent with the ALJ's RFC.  *But see* n. 9, *infra*.[8]

Plaintiff contends that the ALJ's step five conclusion is flawed because his hypothetical
to the VE failed to include additional limitations identified by her and/or her treating physician.
However, a hypothetical need only reasonably incorporate the disabilities and limitations
recognized by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).  Here, the ALJ's
hypothetical(s) to the vocational expert substantially incorporated the limitations recognized in
his residual functional capacity assessment, and that assessment is supported by substantial
evidence.  *See* discussion, *supra*.[9]

---

[8]  Two representative jobs identified by the VE at the light exertional level were Cashier,
DOT # 211.462-010 and General Office Clerk, DOT # 222.587-038.  (Tr. 22, 49-50).   In this
region, there are approximately 23,603Cashier positions and 4,027 General Office Clerk
positions.  (Tr. 22).  These jobs constitute a significant number of jobs in the "national
economy."  42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200
jobs at state level and 10,000 nationally, constitute a significant number).

[9]  Although not raised by plaintiff, the court notes that the hypothetical(s), in fact, omitted
the postural limitations that the ALJ ultimately included in his RFC.  This error proved harmless,
however, because these postural limitations did not preclude the ability to perform these jobs.
*See* DOT # 211.462-010, 1991 WL 671840 and DOT # 222.587-038 (Router) 1991 WL 672123;
*Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative
proceedings is not required);  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's
omission does not require remand unless it affected claimant's substantial rights).

**<u>Conclusion</u>**

The ALJ in this case was tasked with determining whether plaintiff was disabled during the relevant period.  In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence.  The evidence was not uniform and could have supported a different outcome.  However, conflicts in the evidence are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.[10]  That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written

---

[10]  Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision.  Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted).  One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result.  *Id.*  This exception is applicable here.  Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence.  *See e.g., Foster, supra; Garth, supra*.

objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 29th day of June 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE